IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHENANGO INCORPORATED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 08-199 |
| | ) |
| MASSEY COAL SALES COMPANY, | ) |
| Inc. d/b/a MASSEY METALLURGICAL | ) |
| COAL, INC. and MASSEY ENERGY | ) |
| COMPANY, | ) |
| Defendants. | ) |

## OPINION

Presently pending before the Court are: 1) cross motions for partial summary judgment filed by Plaintiff Shenango Incorporated ("Shenango") and Defendants Massey Coal Sales Company, Inc. d/b/a Massey Metallurgical Coal, Inc. and Massey Energy Company (collectively, "Massey"); 2) Shenango's motion for sanctions; and 3) Shenango's motion to strike evidence. For the reasons set forth below, we will deny all motions.

### I. Background

Shenango is a manufacturer and seller of coke to the steel industry with operations located on Neville Island, near Pittsburgh, Pennsylvania. On January 1st, 2004, Shenango and Massey entered into a Coal Purchase Agreement that contained a *force majeure* provision listing "labor difficulties" and labor shortages as possible *force majeure* occurrences. Massey Energy was not a direct party to this contract but is a parent company of Massey. The Coal Purchase Agreement was for the delivery of 200,000 tons of coal, per year, beginning January 1, 2004, and continuing through December 31, 2005. In 2005, Massey Coal Sales delivered 141,172.18 tons of coal.

1

According to Shenango, rather than delivering the agreed-upon amount of coal, Massey Coal Sales sent a letter to Shenango, and other customers, claiming the failure to deliver was caused on the *force majeure* events. Complaint, ¶ 2. Shenango further alleges that it had received other letters based on supposed *force majeure* events; however Massey objects to the characterization of these letters by Shenango. Shenango asserts that the first *force majeure* event asserted by Massey occurred in December 2004, when a dispute with the CSX railroad precluded delivery of the coal. This event was challenged by Shenango and subsequently not used as a *force majeure* event by Massey. In January 2005, Massey allegedly sent a letter claiming another *force majeure* event had taken place when flooding prevented barge shipments. In May, 2005, Massey sent a letter to Shenango claiming that a roof fall over a conveyer belt, used for moving coal out of the mine, was a *force majeure* event and Massey would be unable to deliver the coal during that month.

In a letter dated July 21, 2005, Massey claimed a *force majeure* event that is the main dispute of this action. In that letter, Massey claimed that Black King Mine -- the mine from which Shenango's coal was mined -- was forced to be "idled" due to a labor shortage. Shortly thereafter Massey conveyed that it would only be able to deliver 52% of the coal promised under the contract.

This action began when Shenango filed a complaint against Massey Coal Sales Company and Massey Energy Company alleging that Massey fabricated *force majeure* events, including a July 2005 labor shortage, to avoid its coal obligation to Shenango and in order to sell coal to other companies for higher prices. Complaint, ¶ 1. In its complaint, Shenango claims that Massey deliberately oversold the coal in order to create contracts with higher paying customers and, despite not satisfying contracts with customers such as Shenango, sold the same amount of coal during the year of the alleged *force majeure* events, 2005, as during the previous year. Complaint, ¶ 25-27. Shenango claims that the *force majeure* labor shortage did not excuse Massey from the contractual obligations because Massey allegedly made a

business decision to idle Black King Mine and was not "forced" to idle the mine. Plaintiff's Concise Statement of Material Fact, ¶ 24. Specifically, Shenango has sued Massey for breach of contract (Count I, against Massey Coal), intentional misrepresentation (Count II, against both defendants), and negligent misrepresentation (Count III, against both defendants).

On March 20, 2009, Shenango filed a Motion for Summary Judgment and notified Massey of its intent to file for sanctions. Shenango now moves for partial summary judgment as to Count I, the breach of contract claim, alleging that: there is no evidence that Massey was forced to idle Black King Mine, that there are facts demonstrating that idling was planned to improve Massey's financial position, Massey failed to make "reasonable efforts" to remove the *force majeure* problems, and the notice of the *force majeure* event was untimely and untrue.

On April 23, 2009, Shenango brought a Motion for Sanctions pursuant to Fed. R. Civ. P. 11 against defendants and their counsel for asserting legally and factually baseless defenses under the *force majeure* clause of the Coal Purchase Agreement. Shenango alleges that throughout discovery Massey did not give any evidence supporting the claimed labor shortage in July, 2005. Shenango requests that the Court order an assessment of attorney's fees and other costs involved in bringing the Rule 11 Motion, litigating the *force majeure* defense, and any other relief that the Court deems proper. In response, Massey argues that the Rule 11 motion lacks merit and requests that the Court award Massey and counsel the costs and attorney's fees incurred from having to litigate against it.

Additionally, Shenango has moved to strike evidence that was submitted after summary judgment motions had been filed. Specifically, Shenango has requested that we strike Exhibit E to Massey's Reply in Support of its Motion for Partial Summary Judgment, an affidavit executed by Wayne Persinger, a Massey official who testified regarding staffing problems specific to the Back King Mine. We note for

the record that we have not relied upon the affidavit itself in rendering our decision on the merits of pending motions for partial summary judgment.

On March 20th, 2009, Massey moved for Partial Summary Judgment on the intentional and negligent misrepresentation claims (Counts II and III, respectively). The four arguments presented by Massey against the intentional misrepresentation and negligent misrepresentation claims are that: (1) the "gist of the action doctrine" bars Plaintiff's claims since the damages being sought after in Counts II and III are comparable to the damages that would arise out of the breach of contract claim Shenango is asserting against Massey Coal in Count I; (2) the economic loss rule bars Plaintiff's intentional and negligent misrepresentation claims against Massey and Massey Energy; (3) Shenango has failed to show a legal duty of Massey Energy, a non-signatory to the Coal Purchase Agreement, to a party with whom it has no contractual relationship; (4) and Shenango has failed to show all of the necessary elements of both the intentional and negligent misrepresentation claims to support claims against Massey (both Massey and Massey Energy).

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c), *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment may only be granted if the moving party establishes that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 322-23. Summary judgment is appropriate when the record evidence could not lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986). The court only determines whether there is a genuine issue for trial and does not make those factual determinations that are traditionally left to the jury. *Berckeley Inv.*

*Group. Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir. 2006). Furthermore, reviewing the evidence, the court draws all inferences in favor of the non-moving party. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 149-50 (2000).

### III. Discussion

After review of the parties' briefs and accompanying papers we have determined that genuine issues still exist in as to all claims.[1] That being determined, we will deny both parties' motions for partial summary judgment.

#### a. The Plaintiffs' Motion for Partial Summary Judgment on the Breach of Contract Claim

According to Shenango, the Coal Purchase Agreement requires the party seeking to excuse performance on the basis of *force majeure* to make "all reasonable efforts" to remove the alleged disability and Massey has not adduced evidence in that regard. Shenango claims that the depositions prove that Massey had full control in choosing whether to idle Black King Mine in the first instance, and also, made no effort to restart Section 2 of the mine after it was idled. We find that there is a genuine issue of material fact to support Massey's contention that it made decisions that were the only reasonable solutions for the health and safety of the workers. Chris Adkins, the Chief Operating Officer and Senior Vice President of Massey Energy, made the decision to idle Section 2 of the Back King Mine. He testified that he no longer felt it was safe to operate two sections of the mine with the quantity and quality of labor available at that time. The situation may have forced a responsibility on Massey to choose to idle the mine. Moreover, idling the mine is not the *force majeure* event. Instead, it is the alleged labor shortage that caused the idling of the mine, and it cannot definitively be said at this point that Massey deliberately chose or created the labor shortage.

---

[1] The parties' briefs discuss which state's law governs this dispute. At this point in the proceedings we do not find it necessary to determine the applicable state law since under either Virginia or Pennsylvania law there are genuine issues of material fact.

We recognize that Shenango has put forth compelling evidence in support of its claim that Massey was not "forced" to idle Section 2. For example, Massey has admitted that it expanded its production capacity, added workers, and added mines, all during 2004 and 2005. Also, Jeff Gillenwater, one of Massey Coal Sales's Rule 30 (b)(6) designess with regard to the labor *force majeure*, seemingly admitted that there was no concrete evidence to substantiate Massey's claim that it was forced to idle Section 2 due to a lack of workers. Gillenwater Dep. at 61-63, 69-70. This testimony is subject to interpretation and contradiction and can be explored further at trial. Massey has evidence to support its position that while there may have been an increase in the workforce, workers needed to mine in conditions presented in Black King Mine were not available, either by their personal choice or because of safety issues. Adkins Dep. at 6-7, 23-25, 88-90, 125-27. A jury, despite evidence presented by Shenango, could still reasonably find that there was a labor shortage with regards to Black King Mine and skilled miners. Persinger Dep. at 54-55. Additionally, Massey provides positive proof in the form of depositions and expert testimony that there was a labor shortage in 2005.

Shenango also alleges that the purpose of Massey idling Black King Mine was to improve its margins. Massey Coal arguably admits that Massey's Barry Hale told Shenango's Charles Gress (Shenango's Vice President, Human Resources and Quality and Rule 30(b)(6) designee with regard to Massey's 'bad acts") that Black King Mine would not operate Section 2 even if it had the workers because "the costs were too high." It is unclear whether the entire motivation behind idling the mine was for increasing profits; Massey claims and offers testimony that the purpose behind closing the mine was also potentially tonnage and safety. Don Blankenship (Massey Energy Company's Chief Executive Officer) Dep. at 158-59. Considering the evidence in the light most favorable to Massey and without making determinations on credibility, we find that we cannot determine the motivation behind Massey's transfers.

6

Additionally, summary judgment cannot be granted based on the allegations that the *force majeure* event had been planned since Massey entered into the contract with Shenango in 2003. Even if there were such plans to idle part of Black King Mine, at some point in time, such plans do not necessarily mean that a labor shortage did not occur or that Massey had no intention of satisfying its contract with Shenango.

Finally, the contract does demand that a written notice be given when the situation calls for notices. Coal Purchase Agreement at 10. However, nothing in the *force majeure* section of the contract refers to notices; arguably, a person would be unable to give early notice for many of the *force majeure* events listed, such as ". . . Acts of God, fire, floods, storms, explosions, accidents, epidemics. . . ." Coal Purchase Agreement at 8. Massey has presented evidence that the decision to idle the section was made sometime in June of 2005 and this was not effectuated until early July; the July 21, 2005 *force majeure* notice arguably was "prompt." In any event, we see no reason to preclude Massey from asserting that its failure to perform is excused based on its notice. We will not grant summary judgment for the contract claim on this basis.

### b. Massey's Motion for Partial Summary Judgment on Counts II and III

Defendants move for partial summary judgment on the claims of intentional and negligent misrepresentation filed by Shenango. Defendants presume throughout this motion that there is no contested issue of alleged fraudulent behavior. We cannot find, at this point, based upon the evidence presented in the parties' court submissions, the nature of Defendants' purpose or motivations behind their acts. For that reason we will deny the motion for partial summary judgment.

#### i. The "Gist of Action" Doctrine

Once again, Massey claims that the intentional and negligent misrepresentation claims should be dismissed because of the "gist of the action" doctrine. The "gist of the action" doctrine protects

defendants from having simple breach of contract claims turned into tort claims. *Sands v. Wagner,* 2009 WL 449163, at *1 (3d Cir. 2009). However, the United States Court of Appeals for the Third Circuit has rejected the use of the "gist of the action" doctrine where the defendants' unlawful activity went beyond simple contract breach. *Id.* Here, likewise, Shenango is asserting not only that Massey breached the contract, but that Massey acted fraudulently. As in *Sands* the "gist of the action" doctrine is not applicable.

Furthermore, we have already decided that this doctrine is not applicable in this case, particularly with regards to Massey Energy. In our earlier opinion denying the motion to dismiss, *Shenango Inc. v. Massey Coal Sales,* 2008 WL 1743477, at *3-4 (W.D. Pa. April 15, 2008), we held that the "gist of action" doctrine was improperly raised with regards to Massey Energy because Massey Energy was not sued for breach of contract; furthermore, we held that the doctrine did not apply to Massey Coal Sales because there was the possibility that the claims were proper tort claims and not simply extensions of the breach of contract claim. We also recognized that federal rules of civil procedure allowed for parties to state as many separate claims that a party has -- regardless of consistency -- and that deciding whether a claim fell under tort or contract law was a fact intensive determination that should not always be made on a motion to dismiss. *Id.* at *3; *Orthovita, Inc. v. Erbe,* 2008 WL 423446, at *4-5 (2008) (. . . a court should be slow to dismiss claims under the gist of action doctrine). The evidence adduced during discovery has not altered Shenango's ability to support its claims that Massey not only breached the contract, but did so with the intent to deceive Shenango and with the purpose of increasing its profits. We will therefore deny the motion for summary judgment under the "gist of action" doctrine.

### ii. *Economic Loss*

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d

604, 618 (3d Cir. 1995). We will deny summary judgment on the economic loss doctrine for similar reasons as stated for our denial of the "gist of action" doctrine. First, we note that Massey's only stated reason set forth for granting summary judgment based on the economic loss doctrine is that the economic loss doctrine bars actions for negligent misrepresentation when the duty arises from a contract; it does not even mention intentional misrepresentation. Defendants' Memorandum of Law in Support of Motion for partial Summary Judgment at 19 – 20. Furthermore, Massey continually reasserts that there is a division between contract and tort law and that Massey did not breach any duties that could support a tort claim. *Id.* Since we have already determined that Shenango's tort claims cannot be dismissed under the reasoning that they are merely duplicative of the breach of contract claim, we will not contradict our prior decision and grant Massey's motion under the economic loss doctrine.

Moreover, Shenango correctly asserts that the economic loss doctrine cannot be used to bar claims based on intentional acts and independent fraudulent conduct simply because there is a contract involved. Opposition to Defendant's Motion for Partial Summary Judgment at 13; *See also Oppenheimer v. York Intern.*, 2002 WL 31409949, at *2-3 (Pa.Com. Pl. Oct. 25, 2002) (" . . . this Court has not extended the economic loss doctrine to cover intentional torts. . . Public policy is better served by leaving the possibility of an intentional tort suit hanging over the head of a party considering outright fraud"). Shenango has enough evidence to create a genuine issue of material fact that Massey Coal committed fraud by lying to Shenango when it claimed that the underlying events had occurred in order to increase Massey Energy's margins. This is clearly a separate cause of action. We will not surmise, at this point, that no intentional tort has been committed by Massey. Instead we leave that determination to the jury. Therefore, we will deny Massey's motion for partial summary judgment under the economic loss doctrine.

      ***iii.    Legal Duty and Failure to Fulfill Elements of a Claim***

Finally, Massey Energy's arguments that Shenango has failed to establish a legal duty or has failed to establish the elements of each of the claims fall flat because these arguments similarly presume that Massey's actions were not intentional or fraudulent, which is a central disputed and material fact of this case and is best left to a jury. It is not the Court's role when considering summary judgment motions to make credibility and factual determinations. *Berckeley Inv. Group. Ltd.*, 455 F.3d at 201. The record includes evidence to create a genuine issue of material fact to support Shenango's claim that 1) there were misrepresentations and omissions of fact concerning a "lack of workers," as well as 2) Massey's present intent not to perform when the Coal Purchase Agreement was executed. For all of these reasons, Massey's motion for partial summary judgment as to Counts II and III will be denied.

**IV. Motion for Sanctions**

Shenango has filed a Motion for Sanctions, including a request for attorney's fees, against Massey on the grounds that Massey's *force majeure* defense of the 2005 labor shortage is both legally and factually baseless. We will deny Shenango's Motion for Sanctions because the *force majeure* defense alleged is a valid legal defense and there is contested factual evidence in support of the labor shortage.

    a. **The Standard**

       Rule 11 (b) provides as follows:

By presenting to the court a pleading, written motion or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

  (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

  (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

>(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11 (b). The test for whether a Rule 11 motion should be granted is reasonableness. *Goodman v. Goodman*, 2007 U.S. Dist. Lexis 16010 at 2 (D. N.J. Mar. 6, 2007). An attorney can be sanctioned for both bad faith, negligence, and "to some extent, by professional incompetence." *Gaiardo v. Ethyl Corporation*, 835 F.2d 479, 482 (3d Cir. 1987).

We find that there is no basis for sanctioning Massey's counsel for presenting a defense not warranted by existing law under Rule 11 (b) (2) because it is clear that a labor shortage is one of the possible enumerated *force majeure* events under the Coal Purchase Agreement. Such "labor difficulties" are listed as available *force majeure* defenses under the sales contract. Coal Purchase Agreement at 8.

At this point, we cannot determine if counsel's reliance on the evidence presented is or is not unreasonable. From Shenango's perspective, Massey and counsel should have reconsidered pressing this defense after the case involving Massey and another coal purchaser, the former Wheeling-Pittsburgh Steel Corporation, was decided in 2007. In that case, tried in the Circuit Court of Brooke County, West Virginia, the jury rendered a verdict in favor of Wheeling-Pittsburgh, and found that Massey had used fraudulent *force majeure* claims as an excuse not to fulfill contractual obligations. *Wheeling Pittsburgh Steel Corp and Mountain State Carbon, LLC v. Central West Virginia Energy Co. and Massey Energy Co.*, 2007 WL 4959806 (W.Va. Cir. Ct. Aug. 2, 2007). Wheeling-Pittsburgh allegedly received the same type of letter as Shenango stating that *force majeure* events had prevented Massey from sending the full amount of coal required under contract. According to Shenango, the outcome of this case should have

signaled to Massey's counsel that Massey may have constructed the labor shortage defense reflexively after failing to fulfill the contract. Although troubling, the *force majeure* claim involving Wheeling-Pittsburgh, that the jury found was fraudulently conceived to avoid contractual responsibility, is not binding on us or on any factfinder herein. The present action case involves a different plaintiff and Massey has provided evidentiary support and an expert in support of the labor shortage defense. Massey Coal Sales' Response in Opposition, Appendix Exhibit #2. Counsel should not be sanctioned for zealously advocating for a client when there is evidentiary support for a claim. *Soo San Choi v. D'Appolonia*, 252 F.R.D. 266, 274 (W.D. Pa. 2008).

We are well aware of the testimony in support of both parties' positions on this issue, but we cannot say definitively that sanctions would be appropriate. The meaning of the information supplied in the briefs and responses is contested. For example, Shenango's showing of the six-hundred and sixty-five person increase of workers at Massey between the end of 2004 and the end of 2005 is not enough to prove that in July of 2005 there was no labor shortage of any kind at Black King Mine. This information does not conflict with Massey's assertion that there was a decline of employees beginning in 2004. Appendix to Shenango's Motion for Sanctions Under Fed. R. Civ. P. 11, Tab 1, Gillenwater Dept. at 62. Additionally, if workers with specific skills are required for working in Black King Mine, the fact that Massey opened new mines in 2005 could have had a negative impact on the number of skilled employees able to work at Black King Mine. Massey claims that these numbers only indicate that there were inexperienced miners available, but a shortage of miners with the skills needed to mine at Black King Mine. Such assertions should be presented to a jury for its deliberate consideration.

Lastly, Massey's defense cannot be said to be for an "improper purpose" since it is unclear what the motivation for claiming a labor shortage is at this point in the case. Fed. R. Civ. P. 11 (b) (1). Why

workers were transferred out of Black King Mine throughout 2005 is one of the main contested issues. Sanctions are therefore not appropriate.

b. **Timeliness**

In order to fulfill the timeliness requirement of Rule 11 the moving party must notify the non-moving party 21 days before filing the motion. Fed. R. Civ. P. 11 (c) (2). Additionally, if the misconduct "occurs during the discovery process or another part of the pretrial phase, the matter should be resolved at once, in order to avoid prejudicing the resolution of the litigation's substantive issues on their merits and to discourage the possibility of further abuses." Wright and Miller, *Federal Practice and Procedure,* 715 (2004). The Motion for Sanctions should be filed before the case is decided on the merits. *In re Schaefer Salt Recovery, Inc.,* 542 F.3d 90, 97 (3d Cir. 2008).

Shenango's motion was filed pursuant to the safe harbor provision in Rule 11, over 21 days after giving Massey notice of intent to file. It was filed on April 23rd, 2009, approximately five and one half months after the discovery closed on October 31st, 2008, and not, as Massey seems to claim, seven months after the close of discovery. Although filed a few months after the close of discovery, the materials being litigated in this motion do not prejudice the party's ability to litigate on the merits since the case, itself, depends on the ability to prove or disprove the occurrence of the July 2005 labor shortage. The Rule 11 litigation does not prevent the parties from engaging in substantive issues of the case.

Massey takes issue with the fact that Shenango filed for Summary Judgment on the same day it notified Massey of its intent to file a Rule 11 Motion. Massey Coal Sales' Response in Opposition at 10 ("In practically the same breath, Shenango asks the Court to grant its summary judgment on the *force majeure* claim, then asks Massey Coal Sales to withdraw it or face possible Rule 11 sanctions"). While

giving counsel the benefit of the doubt that the Motion for Sanctions was not filed in order to bully Massey into withdrawing the defense so that Shenango would not have to litigate the summary judgment motion, pairing a Summary Judgment motion with a notification of an intent to file a Rule 11 motion does not, on its face, make the motion untimely through the separateness requirement of Rule 11 since the Rule 11 motion was not included as part of another motion, in a way that deemphasizes the Motion for Sanctions. Wright and Miller, *Federal Practice and Procedure*, 715 (2004). Here, the motions were filed separately. Indeed, Shenango may have also notified Massey of its intention to bring sanctions if they knew of the risks of filing for sanctions after the case was resolved on the merits. *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 97 (3d Cir. 2008).

### c. Awarding Sanctions

Shenango asserts that "[s]anctions include requiring the offending client, lawyer or both, to pay all or part of the adversary's counsel fees incurred as a result of the violation . . . [t]his sanction combines the concepts of deterrence and reimbursement for the wronged party." Brief in Support, p. 3, citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). However, the case cited to took place prior to the 1993 amendment and after the 1983 amendment to Rule 11, during a period when sanctions were mandatory. Wright and Miller, *Federal Practice and Procedure,* 483 (2004). After 1993, the committee redefined how sanctions were to be understood stating that "the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty." Fed. R. Civ. P. 11(d) Advisory Committee's Note (1993). The Third Circuit has indicated that sanctions should not be granted unless there is "a complete lack of factual or legal support for a claim" and the depositions and contractual terms show that there is contested support for the *force majeure* defense. *Soo San Choi v. D'Appolonia*, 252 F.R.D. 266, 274 (W.D.Pa. 2008).

14

Still, the court has "broad discretion" in awarding sanctions. *Soo San Choi,* 252 F.R.D. at 274. Attorney's fees can be awarded "if so warranted" providing that they are "not be more severe than reasonably necessary to deter repetition of the conduct by the offending person." Fed. R. Civ. P. 11(d) Advisory Committee's Note (1993).

There are too many factual disputes that must be resolved before awarding the attorney's fees sanctions requested by Shenango. However, we note that if a company repeatedly goes to trial and the court or jury continually finds the same type of defense to be fraudulent then there is blatant repetition of misconduct that should be deterred. *See Talley v. City of Atl. City N.J.*, Civil Action No. 04-1146, 2007 U.S. Dist. LEXIS 49486 at *14-16 (D.N.J. July 10, 2007); *see also* Fed. R. Civ. P.11(c) (4). For that reason, if it is determined at a later point that Massey and counsel acted with improper purpose or without real evidentiary support then Shenango should have the opportunity to submit another Rule 11 motion.

The motion for sanctions will accordingly be denied without prejudice.

### V. Motion to Strike

Shenango has filed a motion to strike Exhibit E to Defendants' Reply in Support of Motion for Partial Summary Judgment. At issue is an affidavit executed by Wayne Persinger. Shenango asserts that Massey should be precluded from relying on this affidavit as a sanction for discovery abuses, arguing that Massey failed to meet its obligation to educate its 30 (b)(6) witness prior to his deposition. We will deny the motion. Mr. Persinger was deposed on October 20, 2008. His affidavit is dated May 5, 2009. It contains his more-specific recollections of why certain miners were transferred from, voluntarily terminated their employment with, or were terminated from Black King Mine. The affidavit arose after he reviewed the Census Reports, which apparently were discovered October 28, 2008. In any event, exclusion of such

evidence is an extreme sanction, it would not have affected the outcome of the ruling on the motions for partial summary judgment, Shenango does not appear to have suffered any marked prejudice or surprise at its contents.

## VI. Discovery

In its Brief in Support of Plaintiff's Motion for Partial Summary Judgment on Breach of Contract ("Brief"), Shenango explains that in response to expert discovery (as opposed to fact discovery), on January 29, 2009, Massey produced a partial set of personnel files, which were supplemented in March 2009, three days before the deadline to file motions for summary judgment. Brief at 15-16. These files apparently contained personnel records of workers that left Black King Mine during January 2005. Shenango explains in a footnote:

> If the Court denies Shenango's Motion [for partial summary judgment], Shenango reserves its right to request re-opening depositions at Massey's expense, to ensure that Shenango's discovery rights are not prejudiced. Shenango has not had the opportunity to examine any witnesses on the information contained in these files. Because Shenango believes it is entitled to summary judgment on this record and does not wish to delay any ruling to that effect, Shenango will defer seeking such relief until after resolution of its Motion.

Brief at 16, n. 23. We find, without ruling on the request that it should be at Massey's expense, that in the interest of fairness and out of an abundance of caution, Shenango is entitled to pursue additional fact discovery and that discovery should be re-opened for this limited purpose.

## VII. Conclusion

For the foregoing reasons the Defendants' Motion for Partial Summary Judgment and the Plaintiff's Motion for Partial Summary Judgment on the Breach of Contract Claim are denied.

Additionally, the Plaintiffs' Motion for Sanctions is denied without prejudice. Plaintiff's Motion to Strike is also denied.

    An appropriate order follows.

Dated: *September 9, 2009*

                                              Maurice B. Cohill, Jr.
                                              Senior United States District Judge